**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-20286-Civ-BECERRA/TORRES

YAMILETH PEREYRA-DIAZ,

     *Plaintiff,*

v.

CITY OF DORAL, a municipal corporation
and BARBARA HERNANDEZ, an individual,

     *Defendants.*

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS**

     This matter is before the Court on Defendants', the City of Doral's ("the City") and Barbara Hernandez's ("Ms. Hernandez") (collectively, "Defendants") Motion to Dismiss Plaintiff's, Yamileth Pereyra-Diaz's ("Plaintiff" or "Ms. Diaz"), Amended Complaint. [D.E. 19]. Plaintiff has responded to the motion [D.E. 28], to which Defendants replied. [D.E. 31]. The motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, Defendants' motion should be **DENIED**.

---

[1] On September 3, 2024, the Honorable Jacqueline Becerra referred this motion to the Undersigned Magistrate Judge for a Report and Recommendation. [D.E. 36].

## I.    BACKGROUND

This case revolves around Plaintiff's two separate employment tenures with the City; as to the former, Plaintiff alleges a breach of contract, and as to the latter, Plaintiff alleges 42 U.S.C. § 1983 violations.

Originally, the City employed Plaintiff as a Legal Office Manager/Paralegal until Plaintiff's resignation in December of 2022. After her resignation, Plaintiff accepted a severance of seven-weeks' pay in exchange for a general release. Plaintiff alleges, however, that the City paid her only six weeks of severance and refuses to pay her the seventh week as agreed. The unpaid seventh week of severance is thus the basis for Plaintiff's breach of contract claim.

A few months later, on May 13, 2023, Plaintiff applied to serve as Legislative Analyst for the City (more specifically, for Doral Councilwoman Digna Cabral). In that application, Plaintiff admittedly "neglected to mention that she had been employed for a few weeks with the Village of Key Biscayne." [D.E. 15 at ¶ 11].

Ten days later, on May 23, 2023, the City informed Plaintiff that her application had been rejected because she failed to disclose her employment with Key Biscayne. On the same day, Plaintiff received another call from the City Manager, Defendant Hernandez, together with Councilwoman Cabral. On that call, Ms. Hernandez allegedly "grilled" Plaintiff for failing to disclose her employment with Key Biscayne. [*Id*. at ¶ 14]. But Councilwoman Digna Cabral stated during the call that she nonetheless wished to hire Plaintiff as her Legislative Analyst.

Nevertheless, three days later on May 26, 2023, the City still hired Plaintiff for the Legislative Analyst position to begin on May 30, 2023.  One week later, on June 6, 2023, Ms. Hernandez suddenly emailed Plaintiff a termination letter that terminated Plaintiff for her failure to disclose her prior job with Key Biscayne. The City's termination letter did not include an opportunity for "any name-clearing hearing" nor an opportunity to "appeal ... the adverse decision made ... by Hernandez." [*Id*. at ¶ 22; 24].

After her termination, Plaintiff filed this lawsuit against the City and Ms. Hernandez. The Complaint includes three counts:

- Count I: Deprivation of Property Interest Without Due Process of Law (against the City and Ms. Hernandez);

- Count II: Deprivation of Liberty Interest Without Due Process of Law (against the City and Ms. Hernandez); and

- Count III: Breach of Severance Agreement (against only the City).

In the pending motion, Defendants seek to dismiss each count for failure to state a claim. Defendant also argues that Ms. Hernandez cannot be sued under qualified immunity.

## II.    APPLICABLE LAW AND PRINICPLES

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.; *see also Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.  *Id*.; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

Defendants move to dismiss the entirety of Plaintiff's Amended Complaint. Specifically, Defendants argue that Plaintiff has not established a protected property interest for purposes of due process; has not suffered from constitutionally inadequate process; has not adequately alleged a false statement to support her "stigma plus" claim (and therefore has not suffered deprivation of a liberty interest); and has not stated a claim for breach of contract under Florida law. Additionally, Defendant asserts that Ms. Hernandez should be entitled to qualified immunity, which would prevent her from being sued as to Counts I and II.

Plaintiff, in response, asserts that she has alleged adequate facts to render each of her claims plausible. Additionally, Plaintiff argues that Ms. Hernandez is not entitled to qualified immunity because her actions do not satisfy the Eleventh Circuit's requirements. We will first turn to Defendants' due process arguments, before analyzing qualified immunity and the breach of contract claim.

### A. **_Plaintiff's Property Interest Claim_**

Defendant moves to dismiss Plaintiff's first procedural due process claim on two separate bases: first, that Plaintiff had no valid property interest because she had no expected interest in her continued employment with the City, and second, that Plaintiff did not suffer from unconstitutional process because Plaintiff could have sought state review of her termination.

### *1. Valid Property Interest*

"Whether an employee has a property interest in his job is determined by reference to state law." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 957 (11th Cir. 2019) (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). In Florida, "an 'at-will' employee has no property right in continued employment." *Noles v. Wakulla Cnty. Bd. of Cnty. Comm'rs*, No. 4:12CV79-RS/CAS, 2012 WL 3230499, at *3 (N.D. Fla. May 31, 2012), *report and recommendation adopted*, 2012 WL 3206220 (N.D. Fla. Aug. 6, 2012) (citing *Blanton v. Griel Memorial Psychiatric Griel Memorial Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985)). But, "a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee." *Gonzalez v. City of Hialeah*, 744 F. App'x 611, 614 (11th Cir. 2018) (quoting *Ross v. Clayton Cnty., Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999)).

Here, Defendant argues that Plaintiff was purely an at-will employee and, therefore, had no property interest in her job. In support, Defendant avers that the City Charter does not contain any language that confers upon Plaintiff an expected continued employment interest. That is, under the City Charter, Plaintiff is merely an at-will employee.

Plaintiff, meanwhile, has a different interpretation of the City Charter. Under the City Charter, a City Manager (i.e., Ms. Hernandez) has the power to terminate employees if that termination is "reasonable," and if that termination "involves violations of the City's laws and policies, and only if advance notice of the action is

given to the Councilmember to whom the impacted staff member reports." [D.E. 28 at 4–5]. Plaintiff interprets this language as "cause"; i.e., that Plaintiff was not an "at-will" employee because there were restrictions placed on the City Manager's ability to terminate her.  Accordingly, Plaintiff argues that she had a property interest in her employment.

Upon review of the City Charter, we agree with Plaintiff that, at this stage, she plausibly alleges a valid property interest in her employment. The City Charter confers upon the City Manager the power of "hiring, supervis[ing], and removal of all City employees, except as otherwise limited in Section 4.02 here." [D.E. 28-2 at 2]. Section 4.02, meanwhile, states the following in pertinent part:

> The City Manager shall retain the right to enforce reasonable discipline [of] the Councilmembers' staff, including termination, for violating the City's laws and policies. The City Manager must provide advanced notice to Councilmember to whom the staff member reports.

[D.E. 28-1 at 2]. Based on this plain language, Plaintiff's view that she may be terminated by the City Manager only "for cause" is plausible. That is, the City Charter's language that the City Manager's right to terminate employees is limited to instances where an employee "violat[es] the City's laws and policies" can be reasonably understood as "for cause" termination.

Guiding our conclusion is the principle that "a public employee has a property interest in continued employment if state law or local ordinance *in any way* 'limits the power of the appointing body to dismiss an employee.'" *Ross*, 173 F.3d at 1307 (emphasis added) (quoting *Barnett v. Housing Auth. of City of Atlanta*, 707 F.2d 1571, 1577 (11th Cir. 1983)). Here, by placing even

somewhat restrictive language on the City Manager's ability to terminate Councilmembers' staff, Plaintiff plausibly alleges that she is not a purely "at-will" employee. *See Nelson v. Mustian*, 502 F. Supp. 698, 706 (N.D. Fla. 1980) (holding that the plaintiff could be fired only for cause and therefore had a property interest in his employment where the relevant handbook language stated that: "Any failure to live up to the rules or any conduct that affects the efficient service of the Hospital gives cause for censure and possible dismissal."); *Metro. Dade Cnty. v. Sokolowski*, 439 So. 2d 932, 934 (Fla. 3d DCA 1983) (finding that the plaintiff-police officers could be fired only for cause and therefore had a property interest in their employment based on the following excerpt from the county code: "Any employee may be suspended or reduced in grade or dismissed ... for any cause which will promote the efficiency of the service."); *Brown v. Georgia Dep't of Revenue*, 881 F.2d 1018, 1028 (11th Cir. 1989) (interpreting virtually identical Georgia law and finding that the plaintiff-employee had a property interest in his employment because "[a]s a whole, the [governing] regulations provided that an employee is entitled to believe he will have a job unless he does something to disentitle himself to it"); *cf. Rico v. Sch. Bd. of Miami-Dade Cnty. Pub. Sch.*, 733 F. Supp. 2d 1319, 1329 (S.D. Fla. 2010) (holding that the plaintiff-employee's employment was "at-will" because the relevant language of the handbook was titled "Termination for No Cause," and unambiguously "allowed the School Board to terminate Rico's employment at 'any time'").

Yet Defendant insists that, because the City Charter does not specifically confer upon Plaintiff (or her position) a constitutionally-protected employment right, no such right exists. But such an exact and precise reference is not required. Rather, the constitutionally-protected property interest is created when, as interpreted by state law, the employee can be fired only "for cause." *See Brown v. Georgia Dep't of Revenue*, 881 F.2d 1018, 1025 (11th Cir. 1989) (noting that "as a matter of federal law a property interest is created whenever a public employee can only be fired 'for cause'" and "[s]tate law determines whether a particular employee is terminable at will or only for cause").

Here, a reasonable and plausible inference can be drawn that the City Charter, as interpreted by Florida law principles, only permits the City Manager to terminate Plaintiff "for cause." Under Eleventh Circuit precedent, that is all that is required to create a plausible property interest in employment.

Accordingly, Plaintiff has alleged facts to support a reasonable inference that she could be terminated by the City Manager only "for cause." As to this argument, then, Defendants' motion should be denied.

### 2. *Adequate Process*

Next, Defendants argue that Plaintiff fails to plausibly allege that she was provided constitutionally inadequate process.

A "procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)). If a constitutional deprivation takes place, "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* The Eleventh Circuit has interpreted the process due as "not only that employed by the board, agency, or other governmental entity whose action is in question, but also … the remedial process state courts would provide if asked." *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000).

Defendants conclude that "the Complaint is devoid of any allegations that Plaintiff ever substantively pursued any state law avenue to challenge the purported deprivation of a purported property interest." [D.E. 19 at 4]. Thus, because Plaintiff did not pursue state court review prior to filing this federal lawsuit, her procedural due process claim must fail.

Plaintiff, conversely, maintains that she received no pre- or post-termination hearing at all. As a result, Plaintiff asserts that the state cannot cure its due process violation via a state court remedy because the violation was complete upon the City's failure to provide a hearing. Thus, in Plaintiff's view, because she received no termination hearing, she had no duty to initiate state court review.

We agree with Plaintiff. The Supreme Court has recognized that "'the root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)).

Defendants do not dispute the allegation that the City failed to provide Plaintiff with a pre- or post-termination hearing. Under these undisputed facts, then, the Court turns to *Galbreath v. Hale County, Ala. Comm'n*, 754 Fed. App'x 820 (11th Cir. 2018). In *Galbreath*, the employer argued that the plaintiff's procedural due process claim should have failed "because she could have sought a state-court hearing on her termination." *Id*. at 827. The plaintiff, however, "received no [pre- or post-termination] hearing at all." *Id*. at 828. Thus, "the District Court correctly ruled [that the plaintiff's] claim, which is based on the 'complete lack of a pretermination hearing,' is not barred by *McKinney*." *Id*. That is, because the plaintiff received no pre- or post-termination hearing, *McKinney's* requirement that the plaintiff seek state court review had no application.

Thus, *Galbrath* makes clear that, under *Loudermill*, a state employee with a property interest in her employment is entitled to a termination hearing. Where a termination hearing is provided in some form, it is possible for the state to cure any inadequate process through state court intervention.

11

But where *no hearing* is provided—as here and as in *Galbrath*—a plaintiff's failure to petition to the state court does not bar her procedural due process claim. *See id.* ("Properly understood, *McKinney's* holding that a state 'may cure a procedural deprivation by providing a later procedural remedy' is true only where post-deprivation procedures satisfy due process. But, where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application.").

Thus, we reject Defendant's argument that Plaintiff's claim fails because she did not seek redress in state court and recommend that Defendants' motion be denied on this score. *See, e.g., Ortiz v. City of Miami*, No. 20-25132-CIV, 2021 WL 5759700, at *4 (S.D. Fla. Dec. 3, 2021) (rejecting the defendant's argument under *McKinney* that the plaintiff's procedural due process claim should be dismissed for failure to seek redress in state court because the plaintiff "was deprived of both a pre-determination and post-determination hearing," and thus the plaintiff's "claim [was] not barred by *McKinney*").

### B. *Plaintiff's Liberty Interest Claim*

Defendant also moves to dismiss Plaintiff's claim for deprivation of a liberty interest; i.e., Plaintiff's "stigma plus" claim.

To establish a liberty interest claim, Plaintiff must establish: "(1) a false statement; (2) of a stigmatizing nature; (3) attending a governmental employee's discharge; (4) made public; (5) by the governmental employer; and (6) without a meaningful opportunity for a name clearing hearing." *Buxton v. City of Plant City,*

*Fla.*, 871 F.2d 1037, 1042-43 (11th Cir. 1989). In connection with a "stigma-plus" claim, the Eleventh Circuit has found that "when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). "[T]he 'stigma-plus' standard requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998).

Here, Defendants attack only the first two elements: that Plaintiff has not plausibly alleged that Defendants have published "a false statement of a stigmatizing nature." *Buxton*, 871 F.2d at 1042. To that end, Defendants assert that Plaintiff's termination letter contained no false, stigmatizing, disparaging, or misleading facts or omissions. Thus, in Defendants' view, Plaintiff's "stigma plus" claim must fail as a matter of law.

Conversely, Plaintiff argues that the termination letter does in fact contain false factual statements, as well as material omissions, which paint Plaintiff as dishonest. Specifically, Plaintiff argues that the termination letter incorrectly states that Plaintiff "provided false information during the hiring process" relating to her Key Biscayne employment. [D.E. 28 at 12]. Further, Plaintiff asserts that the termination letter omits crucial facts surrounding Plaintiff's termination; namely, that Ms. Hernandez and Councilwoman Cabral were fully aware of Plaintiff's Key

13

Biscayne employment before hiring Plaintiff. Thus, as a result of these allegedly false statements of fact and material omissions, Plaintiff argues that she has stated a plausible "stigma plus" claim.

Turning to Plaintiff's Amended Complaint, she alleges that, before being hired by the City to work for Councilwoman Cabral, she informed the City that "she had only been [at Key Biscayne] a very short time and had not received any experience that would be relevant to the applied-for position." [D.E. 15 at ¶ 12]. Then, on the same day, Plaintiff alleges that she confirmed with the City "that she had worked for Key Biscayne for just a few weeks and explained her reason for not adding the information on the employment application." [D.E. 15 at ¶ 14]. Plaintiff also alleges that the decision to hire Plaintiff was made after these conversations took place; thus, Plaintiff alleges, the City was fully aware of Plaintiff's Key Biscayne employment before hiring her.

Based on the language of the termination letter combined with Plaintiff's allegations, we reject Defendant's argument that Plaintiff has not adequately alleged a false, stigmatizing statement and/or omission. The termination letter states that by failing to disclose the Key Biscayne job in her application and during the hiring process, Plaintiff "provided false information during the hiring process" which constituted "a serious breach of trust that cannot be overlooked." [D.E. 15-4 at 3]. At this stage, accepting all of Plaintiff's allegations as true, it is at least plausible that this statement is false and stigmatizing.

More specifically, Plaintiff's allegations (taken as true) can plausibly render false the termination letter's proclamation that she was "dishonest" during the hiring process. That is, while it remains possible that the trier of fact will find that Plaintiff was indeed dishonest, it is at least plausible that Plaintiff's representations fell short of *per se* falsehoods. This is especially true considering (1) Plaintiff's alleged explanation of the Key Biscayne employment being left off of her application; (2) Plaintiff allegedly nonetheless disclosing that employment "during the hiring process"; and (3) that Defendants allegedly hired Plaintiff after learning about her apparent dishonesty.

These facts, taken together and accepted as true, produce a reasonable inference that Defendants' statement that Plaintiff was "dishonest during the hiring process" is false. These plausible allegations, paired with Defendants failure to provide any factually-similar authority that supports the adoption of their position, leads us to reject Defendants' argument.

To be clear, we do not hold that Defendants *did* make a false, stigmatizing representation in the termination letter. But we cannot find at this stage, and as a matter of law, that Plaintiff's allegations that the termination letter contains false, stigmatizing statements is unplausible. Accordingly, we recommend that Defendants' motion be denied as to this claim.

### C. *Unconstitutional Policy or Custom*

Further, Defendants move to insulate the City from liability as to both counts I and II of Plaintiff's Amended Complaint on the grounds that Plaintiff has not

alleged that an unconstitutional custom or practice of the City caused her ostensible injury.

A local government or municipality may be sued under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff, therefore, "must show that [the City] ha[d] a custom or practice of permitting it and that [City's] custom or practice [was] 'the moving force [behind] the constitutional violation.'" *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)).

"Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing *Bd. of Cty. Commissioners v. Brown*, 520 U.S. 397, 403–04 (1997)). In instances where the plaintiff alleges a single decisionmaker engaged in the constitutional violation, "'liability may arise from 'a course of action tailored to a particular situation and not intended to control decisions in later situations,' provided that 'the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Additionally, "identifying

and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement." *Hoefling*, 811 F.3d at 1280.

Defendants argue that Plaintiff's Amended Complaint "is devoid of substantive factual allegations establishing any long-standing custom of violating City employees' purported procedural due process or liberty interest rights." [D.E. 19 at 7]. Defendants further argue that Plaintiff has pleaded no facts that suggest such a policy, even if it existed, was the moving force behind Plaintiff's alleged constitutional depravations.

In response, Plaintiff argues that under the "single-decision-by-a-municipal-policymaker theory," Plaintiff has plausibly alleged that Ms. Hernandez was the final policy making authority with respect to terminating City employees, and was also the individual who terminated Plaintiff. This is evidenced, asserts Plaintiff, by the fact that the City Charter does not contemplate administrative review of Ms. Hernandez's termination decisions. Thus, Plaintiff argues that she has alleged sufficient facts to impose municipal liability as to Counts I and II.

Indeed, Plaintiff does allege that "Hernandez, as Doral's City Manager, ... had final policymaking authority and was the final decision maker regarding [Plaintiff's] termination ...." [D.E. 15 at ¶ 26]. And it is true, based on the City Charter excerpts that Plaintiff relies upon in the Amended Complaint, that there exists (or at least, Plaintiff has plausibly alleged) no administrative review for Ms. Hernandez's termination decisions. *See Scala*, 116 F.3d at 1401 (noting that "[f]inal policymaking

authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review").

At this stage, then, Plaintiff's allegations seem to fit within the "single-decision-by-a-municipal-policymaker theory" and survive Defendants' motion to dismiss. *See Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1189 (S.D. Fla. 2022) (holding the plaintiff "plausibly allege[d] that a final policymaker" deprived the plaintiff of constitutional rights where the decisionmaker's actions plausibly resulted in a constitutional violation and were plausibly alleged to not be subject to meaningful administrative review); *see also Davis v. City of Apopka*, 734 F. App'x 616, 620 (11th Cir. 2018) (holding that the plaintiff plausibly alleged municipal liability via "a single decision by a municipal policymaker" because "[t]he complaint clearly alleged that Manley, as Chief of Police, personally directed the warrantless search of the Davis home. The complaint did not expressly state that Manley was a final policymaker, but that is in no way fatal to Davis's claim because whether an individual is a final policymaker is a question of law, not fact. Complaints must allege facts; they are not required to allege conclusions of law.").

We acknowledge Defendants' concerns that Plaintiff's allegations do not necessarily have evidentiary support at this stage. But that is not required. Indeed, the Eleventh Circuit has clarified that "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" *Hoefling*, 811 F.3d at 1280 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)).

Surely, Defendants may wish to disprove Plaintiff's allegations that Ms. Hernandez was the final decisionmaker or that Ms. Hernandez has final policymaking authority. To that end, Defendants may pursue discovery and assert their evidentiary findings at summary judgment and/or trial. But at the pleading stage, Plaintiff has plausibly alleged that Ms. Hernandez—the City Manager working under a City Charter that does not provide for pre- or post-termination hearings—is a final policymaking authority whose decisions are not subject to meaningful administrative review. That states a plausible claim. *See, e.g., Congleton v. Gadsden Cnty., Fla.*, No. 4:11-CV-00097-SPM, 2011 WL 2174350, at *3 (N.D. Fla. June 1, 2011) ("This Court is not deciding whether Lawler had final policymaking authority, only whether Congleton alleged sufficient facts to make it plausible that Lawler had such authority. On the basis of Congleton's allegations, it is reasonable for this Court to draw the inference that Gadsden County is liable for the actions of Lawler, who plausibly has official authority to act for the county.").

Accordingly, on this score, Defendants' motion should be denied.

### D. *Qualified Immunity*

We turn to Defendants' argument that qualified immunity should insulate Ms. Hernandez from liability as a matter of law.

"Qualified immunity protects government officials performing discretionary functions ... from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1343–44 (11th Cir. 2016) (quoting *Foy v. Holston*, 94

F.3d 1528, 1532 (11th Cir. 1996)). Where the public official is acting in her discretionary capacity, "the burden shifts to the plaintiff[ ] to show that qualified immunity is inappropriate." *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To satisfy this burden, Plaintiff faces a two-part test. "First, the plaintiff[ ] must allege facts that establish that the officer violated [the plaintiff's] constitutional rights; and second, the plaintiffs must also show that the right involved was 'clearly established' at the time of the putative misconduct." *Id.* at 1250 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). This doctrine aims to "protect[ ] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Lee*, 284 F.3d at 1194 (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). A constitutional right is "clearly established" for qualified immunity purposes if the state actor had "fair warning" that her conduct was unconstitutional via precedent from "the United States Supreme Court, the Eleventh Circuit, or the highest court of the state where the [conduct] took place." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1146 (11th Cir. 2017) (internal citations omitted).

Here, Plaintiff does not meaningfully dispute that Ms. Hernandez acted within her discretionary capacity. Further, we have already found that Plaintiff has plausibly alleged constitutional deprivations. Thus, our analysis will center on whether Plaintiff's allegedly violated rights (i.e., her liberty interest and her property interest) were clearly established for qualified immunity purposes.

Defendants argue that Plaintiff has failed to adequately allege that, when Ms. Hernandez exercised her discretionary duties, Ms. Hernandez knowingly violated Plaintiff's constitutional rights. Further, Defendants aver that Plaintiff has not established that Ms. Hernandez acted so incompetently, and without regard for Plaintiff's constitutional rights, as to expose her to suit and liability.

Plaintiff, meanwhile, argues that at the time of her termination, both her property interest in her employment and her liberty interest in her reputation were clearly established under Eleventh Circuit precedent. Thus, Plaintiff argues that because Ms. Hernandez had "fair warning" of Plaintiff's relevant rights, Plaintiff's allegations plausibly stave off qualified immunity.

### 1. Liberty Claim

As to the liberty deprivation claim, Plaintiff has plausibly alleged that Ms. Hernandez had "fair warning" that she, by publishing plausibly-false, stigmatizing information and not providing Plaintiff with a name-clearing hearing, was violating Plaintiff's constitutional rights. Indeed, it is beyond debate that it is unconstitutional for a state-actor employer to publish false, stigmatizing information without providing a name-clearing hearing either pre- or post-termination; indeed, published Eleventh Circuit opinions have held so in clear terms. *See Buxton*, 871 F.2d at 1046 ("We hold that a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required.").

21

In support of their contrary argument, Defendants both fail to cite to any authority presenting factually similar scenarios in which qualified immunity was applied, and fail to grapple with the persuasive caselaw presented by Plaintiff— namely, *Johnston v. Borders*, 724 F. App'x 762 (11th Cir. 2018). There, a sheriff sought qualified immunity after publishing allegedly stigmatizing information in the plaintiff's personnel files. The court refused to apply qualified immunity, because "[s]everal of [this Circuit's] published decisions gave Sheriff Borders 'fair warning' that his conduct was unconstitutional." *Id*. at 768. Specifically, this Circuit has "held that government employees are entitled to a meaningful opportunity for a name clearing hearing after an employer places allegedly false and stigmatizing information in their personnel files." *Id*. (citing *Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000) and (*Buxton*, 871 F.2d at 1038). Thus, the sheriff was not entitled to qualified immunity.

Here, nearly identically, Plaintiff has plausibly alleged that Ms. Hernandez terminated Plaintiff and published false, stigmatizing information in her personnel file without an opportunity for hearing. We see no reason to stray from the analysis in *Johnson*, which relies on published opinions in this Circuit that held that an opportunity for hearing is required under these facts. Thus, because, as *Johnston* points out, Ms. Hernandez had "fair warning" that her actions were unconstitutional, we find that Plaintiff's allegations should stave off the application of qualified immunity.

Thus, Ms. Hernandez should not be entitled to qualified immunity as to Plaintiff's "stigma plus" liberty claim.

### 2. *Property Claim*

As to the property deprivation claim, it is similarly well established by Eleventh Circuit precedent that state employees who are not "at-will" have a continued property interest in their employment. *See Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)) ("The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"); *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir. 1982) (citing *Laney v. Holbrook*, 150 Fla. 622 (1942)) ("Where a statute or ordinance lists specific grounds for discharge of a public employee or states that a public employee can only be terminated for just cause, Florida courts hold that the employee has a property right of which he cannot be deprived without due process."); *Taylor v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:20-CV-5048-SEG, 2022 WL 4857906, at *16 (N.D. Ga. Oct. 3, 2022) (quoting *Barnes*, 669 F.3d at 1307) ("It is, to be sure, clearly established that 'when a government benefit cannot be removed except 'for cause,' an individual has a property interest in that benefit[.]'").

Here, Defendants offer no reason or authority as to why Ms. Hernandez—the City Manager—would not have "fair warning" of the laws governing her conduct. More specifically, Defendants have not persuaded us that, when (taking Plaintiff's allegations as true) Ms. Hernandez allegedly terminated Plaintiff "for cause" and

failed to provide a pre- or post-termination hearing, she was reasonably unaware of the constitutional infirmities. Accordingly, having found that Plaintiff has plausibly alleged a constitutional violation of which Ms. Hernandez should have had "fair warning," we find Defendants' conclusory argument to be unpersuasive. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."); *Barnes*, 669 F.3d at 1308 (affirming the denial of qualified immunity defense because "(1) Barnes had a protected property interest and that (2) he was due some predeprivation process before VSU could deprive him of that interest. Because Barnes received no predeprivation process, we affirm the district court's denial of Zaccari's motion for summary judgment grounded on qualified immunity").

Thus, at this stage, Defendants' request for qualified immunity should be denied without prejudice. Ms. Hernandez, of course, is free to raise this issue again at summary judgment or trial.

### E. *Breach of Contract Claim*

Lastly, the City moves to dismiss Plaintiff's breach of contract claim for allegedly-unpaid severance. The City paid Plaintiff six weeks of severance rather than the seven weeks that was agreed to in the parties' general release agreement. After the general release was executed, the City contends, it learned that the severance provision violated Florida law (§ 215.425(4)(b), Fla. Stat) because a general release agreement cannot provide for a severance payment that exceeds six weeks.

Thus, the City asserts that its hands are tied: it would violate Florida law for the City to pay a seventh week of severance, and therefore Plaintiff's breach of contract claim should be dismissed with prejudice.

Plaintiff responds that § 215.425(4)(b) does not apply because the release agreement did not settle "an employment dispute" between the parties. Rather, Plaintiff alleges that she resigned voluntary and no employment dispute preceded that resignation. And, Plaintiff argues, because the severance did not settle "an employment dispute," § 215.425(4)(b)'s six-week cap has no application. Accordingly, Plaintiff contends, there is no six-week cap on severance payments and Defendants only argument fails.

This issue hinges on whether § 215.425(4)(a) or § 215.425(4)(b) should apply. If subsection (b) applies (that is, if the severance pay "represents the settlement of an employment dispute"), only six weeks of severance is permitted and Defendants' motion succeeds. But if the severance pay does not "represent the settlement of an employment dispute," then subsection (a) applies; that subsection permits twenty weeks of severance, and thus Defendants' motion would fail.

Plaintiff pleads (which we must accept as true at this juncture) that she voluntarily resigned—not that she resigned as the result of an "employment dispute." While it may appear odd that the City would voluntarily pay Plaintiff seven weeks of severance despite their being no dispute, Defendants have not meaningfully argued that any employment dispute existed. Thus, we (1) have plausible allegations that undermine the application of § 215.425(4)(b) (i.e., that the severance pay did not

necessarily "represent the settlement of an employment dispute"), and (2) no helpful argument (and no authority) from the City that § 215.425(4)(b) should apply in spite of Plaintiff's presumably veracious allegations.

Thus, in light of the motion to dismiss standard and Plaintiff's allegations that no employment dispute preceded her voluntary resignation, we conclude that the City's motion to dismiss this claim should be denied. Perhaps there exists evidence that an employment dispute did in fact precede Plaintiff's resignation; we make no finding either way. Indeed, that finding is best suited for summary judgment or trial after the parties have had an opportunity to conduct discovery and develop a record on the matter. But based on the current record, we find that Plaintiff's allegations plausibly allege the non-existence of an employment dispute preceding her resignation, and thus Plaintiff plausibly staves off, for the moment, application of § 215.425(4)(b).

Thus, Defendants' motion to dismiss as to Count III should also be denied.

## IV.    CONCLUSION

For the reasons set forth above, we recommend that Defendants' Motion to Dismiss [D.E. 19] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on

appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of September, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge